**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE LEON,<br><br>                    Plaintiff,<br><br>            vs.<br><br>CYMABAY THERAPEUTICS, INC., ROBERT J. WILLS, JANET DORLING, ERIC LEFEBVRE, CAROLINE LOEWY, SUJAL SHAH, KURT VON EMSTER, and THOMAS G. WIGGANS,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Enrique Leon ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against CymaBay Therapeutics, Inc. ("CymaBay" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act")

- 1 -
COMPLAINT

1. as a result of Defendants' efforts to sell the Company to Gilead Sciences, Inc. ("Parent") through a wholly owned subsidiary, Pacific Merger Sub, Inc. ("Merger Sub," and together with Parent, "Gilead") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a February 12, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Merger Sub will commence a tender offer for all of the Company's issued and outstanding shares of common stock ("Company Common Stock"), par value $0.0001 per share, other than any Excluded Shares , at a purchase price of $32.50 per Share (the "Offer Price"), net to the seller in cash, without interest and subject to any required withholding of taxes.

3. Thereafter, on February 23, 2024, CymaBay filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for CymaBay, provided by CymaBay to the Company's financial advisors Centerview Partners, LLC ("Centerview") and Lazard Frères & Co. LLC ("Lazard"); and (c) the data and inputs underlying the financial valuation

analyses, that purport to support the fairness opinion by Centerview and Lazard, and provided to the Company and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7. Plaintiff is a citizen of California and is a CymaBay stockholder.

8. Defendant CymaBay, a clinical-stage biopharmaceutical company, focuses on developing and providing therapies to treat liver and other chronic diseases. The Company is incorporated in the State of Delaware, has its principal executive offices located at 7575 Gateway Boulevard, Suite 110, Newark, CA 94560 and its shares trade on the Nasdaq Capital Market under the ticker symbol "CBAY."

9. Defendant Robert J. Wills ("Wills") has been a Director of the Company at all relevant times. In addition, Wills serves as the Chair of the Company Board.

10. Defendant Janet Dorling ("Dorling") has been a Director of the Company at all relevant times.

11. Defendant Eric Lefebvre ("Lefebvre") has been a Director of the Company at all relevant times.

12. Defendant Caroline Loewy ("Loewy") has been a director of the Company at all relevant times.

13. Defendant Sujal Shah ("Shah") has been a Director of the Company at all relevant times. Defendant Shah also serves as the Company's President and Chief Executive Officer ("CEO").

14. Defendant Kurt von Emster ("Emster") has been a director of the Company at all relevant times.

15. Defendant Thomas G. Wiggans ("Wiggans") has been a director of the Company at all relevant times.

16. Defendants identified in ¶¶ 9-15 are collectively referred to as the "Individual Defendants."

17. Non-Party Parent Gilead, a biopharmaceutical company, discovers, develops, and commercializes medicines in the areas of unmet medical need in the United States, Europe, and internationally.

18. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

22. CymaBay, a clinical-stage biopharmaceutical company, focuses on developing and providing therapies to treat liver and other chronic diseases. Its lead product candidate is seladelpar (MBX-8025), a selective agonist of peroxisome proliferator activated receptor delta for the

treatments of autoimmune liver disease, primary biliary cholangitis (PBC). The company also develops MBX-2982 for the disease/condition of hypoglycemia in type 1 diabetic.

23. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the November 7, 2023 press release announcing its 2023 Q3 financial results, the Company highlighted such milestones as follows: Held $438.8 million in cash, cash equivalents and investments as of September 30, 2023; and Collaboration revenue recognized for the nine months ended September 30, 2023 was $31.0 million.

24. Speaking on these positive results, CEO Defendant Shah commented on the Company's positive financial results as follows, "This past quarter has been a momentous one for CymaBay where we achieved multiple significant milestones advancing us towards our goal of improving lives of people living with PBC. The consistency and depth of the clinical data set generated from Phase 2, ENHANCE and now RESPONSE demonstrates that seladelpar has the potential to be the first ever approved treatment for patients with PBC to significantly reduce both markers related to the risk of disease progression and symptoms. I am incredibly proud of the team here at CymaBay and commend them for the progress they helped achieve and equally grateful to patients and patient advocacy groups, their caregivers and our investigators for their partnership and support. We are eager to continue the positive momentum and are working diligently on our near-term milestones for seladelpar."

25. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by CymaBay.

26. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused CymaBay to enter into the Proposed Transaction without providing requisite information to CymaBay stockholders such as Plaintiff.

*The Flawed Sales Process*

27. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company.

28. The Recommendation Statement fails to disclose the necessity for the Company to retain two financial advisors in relation to the Proposed Transaction.

29. Moreover, the Recommendation Statement fails to provide adequate information relating to work Lazard may have performed for the Company, Gilead or any affiliates in the two years immediately preceding the Proposed Transaction.

30. Additionally, the Recommendation Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Gilead, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Recommendation Statement, if so in all specific manners.

31. The Recommendation Statement fails to provide adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

32. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

33. On February 12, 2024, CymaBay and Gilead issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> FOSTER CITY, Calif. & NEWARK, Calif. (BUSINESS WIRE) -- Gilead Sciences, Inc. (Nasdaq: GILD) and CymaBay Therapeutics, Inc. (Nasdaq: CBAY) announced today a definitive agreement under which Gilead will acquire CymaBay for $32.50 per share in cash or a total equity value of $4.3 billion. The addition of CymaBay's investigational lead product candidate, seladelpar for the treatment of primary biliary cholangitis (PBC) including pruritus, complements Gilead's existing liver portfolio and aligns with its long-standing commitment to bringing transformational medicines to patients.

This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20240211034242/en/

"We are looking forward to advancing seladelpar by leveraging Gilead's long-standing expertise in treating and curing liver diseases," said Daniel O'Day, Chairman and Chief Executive Officer, Gilead Sciences. "Building on the strong research and development work by the CymaBay team to date, we have the potential to address a significant unmet need for people living with PBC and expand on our existing broad range of transformational therapies."

PBC is a rare, chronic, cholestatic liver disease mainly affecting women (1 in 1,000 women over the age of 40 or about 130,000 total people in the U.S.) that impairs liver function and quality of life. The most common early symptoms of PBC are pruritus (itching) and fatigue, which can be debilitating for some patients. Progression of PBC is associated with an increased risk of liver-related mortality.

Seladelpar is an investigational, oral, selective peroxisome proliferator-activated receptor delta (PPARδ) agonist, shown to regulate critical metabolic and liver disease pathways. The United States Food and Drug Administration (FDA) has completed its filing review and accepted a New Drug Application for seladelpar and granted priority review with a Prescription Drug User Fee Act target action date of August 14, 2024.

Seladelpar received FDA Breakthrough Therapy Designation for use in the treatment of PBC including pruritus in patients without cirrhosis or with compensated cirrhosis and PRIME status (EMA), as well as Orphan Drug Designation in the U.S. and Europe for the treatment of patients with PBC.

In the pivotal Phase 3 RESPONSE trial, seladelpar achieved statistical significance over placebo across primary composite endpoints of biochemical response (61.7% for patients on seladelpar vs 20.0% for placebo), normalization of alkaline phosphatase at 12 months (25.0% for patients on seladelpar vs 0.0% for placebo) and statistically significant improvement in pruritus at six months among people living with moderate-to-severe itch that was sustained through 12 months.

"Today's agreement with Gilead is the culmination of years of focus and determination at CymaBay to advance seladelpar and bring new hope to people living with PBC and their families," said Sujal Shah, President, and CEO at CymaBay Therapeutics. "Now that seladelpar has achieved priority review with the FDA, we are excited that Gilead, with its long-standing commitment to patients with liver disease, can apply its regulatory and commercial expertise to bring seladelpar as quickly as possible to people with PBC."

**Terms of the Transaction**

The transaction was approved by both the Gilead and CymaBay Boards of Directors and is anticipated to close during the first quarter of 2024, subject to regulatory approvals and other customary closing conditions.

Under the terms of the merger agreement entered into in connection with the transaction, a wholly-owned subsidiary of Gilead will promptly commence a tender offer to acquire all of the outstanding shares of CymaBay's common stock at a price of $32.50 per share in cash, which offer price represents a 27 percent premium to CymaBay's closing share price on February 9, 2024. Following successful completion of the tender offer, Gilead will acquire all remaining shares not tendered in the offer through a second step merger at the same price as in the tender offer. Upon FDA approval of seladelpar, the proposed transaction is expected to enhance Gilead's revenue growth, and it is also expected that the transaction will be approximately neutral to earnings per share in 2025 and significantly accretive thereafter.

Consummation of the tender offer is subject to a minimum tender of at least a majority of then-outstanding CymaBay shares, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions.

BofA Securities, Inc. and Guggenheim Securities, LLC are acting as financial advisors to Gilead. Centerview Partners LLC and Lazard are acting as financial advisors to CymaBay.

**About Seladelpar**

Seladelpar, an investigational treatment for people with PBC, is an oral, selective peroxisome proliferator-activated receptor delta (PPARδ) agonist shown to regulate critical metabolic and liver disease pathways in indications with high unmet medical need. Preclinical and clinical data support its ability to regulate genes involved in bile acid synthesis, inflammation, fibrosis and lipid metabolism, storage, and transport.

**About CymaBay Therapeutics**

CymaBay Therapeutics, Inc. is a clinical-stage biopharmaceutical company focused on improving the lives of people with liver and other chronic diseases that have high unmet medical need. Our deep understanding of the underlying mechanisms of liver inflammation and fibrosis, and the unique targets that play a role in their progression, have helped us receive breakthrough therapy designation (FDA), PRIME status (EMA), and orphan drug status (U.S. and Europe) for seladelpar, a first-in-class investigational treatment for people with PBC. A new drug application for seladelpar was submitted to the FDA in December 2023. Our

evidence-based decision-making and commitment to the highest quality standards reflect our relentless dedication to the people, families, and communities we serve. To learn more, visit www.cymabay.com and follow us on X (formerly Twitter) and LinkedIn.

**About Gilead Sciences**

Gilead Sciences, Inc. is a biopharmaceutical company that has pursued and achieved breakthroughs in medicine for more than three decades, with the goal of creating a healthier world for all people. The company is committed to advancing innovative medicines to prevent and treat life-threatening diseases, including HIV, viral hepatitis, COVID-19, and cancer. Gilead operates in more than 35 countries worldwide, with headquarters in Foster City, Calif.

*Potential Conflicts of Interest*

34. The breakdown of the benefits of the deal indicates that Company insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of CymaBay.

35. Company insiders currently own large, illiquid portions of restricted stock units, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. The Recommendation Statement provides the following but does not account for the merger consideration each of these amounts will be exchanged for upon the consummation of the Proposed Transaction:

| Named Executive Officer | Number of Unvested Company Options (#) | Value of Unvested Company Options ($)(A) | Number of Unvested Company RSUs (#) | Value of Unvested Company RSUs ($)(B) | Total Value of Unvested Equity Awards ($) |
|---|---|---|---|---|---|
| Sujal Shah | 1,310,615 | 28,750,441 | 96,250 | 3,128,125 | 31,878,566 |
| Charles McWherter | 468,383 | 10,396,759 | 31,938 | 1,037,985 | 11,434,744 |
| Paul Quinlan | 406,942 | 8,966,813 | 28,438 | 924,235 | 9,891,048 |

36. Furthermore, certain employment agreements with certain CymaBay executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant several directors

or officers entitled to them, millions of dollars, compensation not shared by Plaintiff.

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Pro-rata Bonus ($)(4) | Tax Reimbursement ($)(5) | Total ($) |
|---|---|---|---|---|---|---|
| Sujal Shah | 1,128,750 | 31,878,566 | 26,000 | 57,098 | 5,052,084 | 38,142,498 |
| Charles McWherter | 834,531 | 11,434,744 | 26,000 | 35,461 | 1,883,210 | 14,213,946 |
| Paul Quinlan | 677,250 | 9,891,048 | 26,000 | 26,646 | 1,465,169 | 12,086,113 |

37. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation. Communications regarding post-transaction employment, during the negotiation of the underlying transaction, must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38. Thus, while the Proposed Transaction is not in the best interests of CymaBay, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Recommendation Statement*

39. On February 23, 2024, the CymaBay Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40. The Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

   a. The necessity for the Company to retain two financial advisors in relation to the Proposed Transaction;

      b. Information relating to work Lazard may have performed for the Company, Gilead or any affiliates in the two years immediately preceding the Proposed Transaction;

      c. Whether the terms of any confidentiality agreements entered during the sales process between Company on the one hand, and any other third party (including Gilead), if any, differed from one another, and if so, in what way; and

      d. Provide adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning CymaBay's Financial Projections*

41. The Recommendation Statement fails to provide material information concerning financial projections for CymaBay provided by CymaBay management and relied upon by Centerview in its analyses.

42. Notably, in its fairness opinion, Centerview indicates that it reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections relating to the Company prepared by management of the Company and furnished to Centerview by the Company for purposes of Centerview's analysis."

43. The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that CymaBay management provided to the Board and Piper. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

44. With regard to *Certain Unaudited Prospective Information*, the Recommendation Statement fails to disclose material line items, including the following:

a. Total Net Revenue including the underlying inputs, metrics, and assumptions used to determine same;

b. Gross Profit including the underlying inputs, metrics, and assumptions used to determine same;

c. R&D expense including the underlying inputs, metrics, and assumptions used to determine same;

d. Total SG&A including the underlying inputs, metrics, and assumptions used to determine same;

e. EBIT including the underlying inputs, metrics, and assumptions used to determine same;

f. NOPAT including the underlying inputs, metrics, and assumptions used to determine same; and

g. Unlevered Free Cash Flow including the underlying inputs, metrics, and assumptions used to determine same.

45. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Centerview's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

47. In the Recommendation Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail

to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48. With respect to the *Selected Public Company Analysis*, the Recommendation Statement fails to disclose:

   a. The enterprise value for each of the Selected Public Companies;

   b. The underlying inputs, metrics, and assumptions used to determine the EV/2027E Revenue Trading Multiple for each of the Selected Public Companies; and

   c. The underlying inputs, metrics, and assumptions used to determine the EV/2027E Revenue Trading Multiples range of 3.75x to 6.50x utilized.

49. With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

   a. The specific date on which each selected precedent transaction closed;

   b. The aggregate value of each selected precedent transaction;

   c. The specific inputs, metrics, and assumptions used to determine the utilized reference range of TV/4-Year Forward Revenue Multiples of 4.50x – 7.50x; and

   d. The number of fully diluted outstanding shares of Company Options, Company Warrants, and Company RSUs as of February 9, 2024, utilized.

50. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

   a. The specific inputs, metrics, and assumptions used to determine the discount rates ranging from 11.5% to 13.5% utilized;

    b.  The Company's weighted average cost of capital utilized, and the specific inputs and metrics used to determine the same;

    c.  The Company's implied terminal value utilized, and the specific metrics, inputs, and assumptions used to determine the same;

    d.  The specific inputs, metrics, and assumptions used to determine the Company's perpetuity decline rate of 50% utilized; and

    e.  The number of fully diluted outstanding shares of Company Options, Company Warrants, and Company RSUs as of February 9, 2024, utilized.

51. With respect to the *Analyst Price Targets Analysis,* the Recommendation Statement fails to disclose the following:

    a.  The specific price targets analyzed; and

    b.  The specific Wall Street firms that generated the analyzed price targets.

52. With respect to the *Precedent Premium Analysis*, the Recommendation Statement fails to disclose the following:

    a.  The specific transactions analyzed;

    b.  The specific acquisition price per share for the transactions analyzed; and

    c.  The specific inputs, metrics, and assumptions used to determine the applied range of 50% to 100%.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard*

53. In the Recommendation Statement, Lazard describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

54. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a. The specific inputs, metrics, and assumptions used to determine the discount rates ranging from 11.5% to 13.5% utilized;

    b. The specific inputs and metrics used to determine the Company's weighted average cost of capital utilized;

    c. The specific inputs and metrics used to determine the Company's implied terminal value utilized;

    d. The specific inputs, metrics, and assumptions used to determine the Company's negative terminal growth rate range of 75.0% to 25.0% utilized; and

    e. The number of fully diluted outstanding shares of Company Options, Company Warrants, and Company RSUs as of February 9, 2024, utilized.

55. With respect to the *Selected Public Company Analysis*, the Recommendation Statement fails to disclose:

    a. The enterprise value for each of the Selected Public Companies;

    b. The underlying inputs, metrics, and assumptions used to determine the EV/2027E Adj. Revenue for each of the Selected Public Companies; and

    c. The underlying inputs, metrics, and assumptions used to determine the EV/2027E Adj. Revenue Multiples range of 3.4x to 4.3x utilized.

56. With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

    a. The specific date on which each selected precedent transaction closed;

    b. The aggregate value of each selected precedent transaction;

      c. The specific inputs, metrics, and assumptions used to determine the utilized reference range of TV/FY+4 Revenue Multiple range of 4.1x – 6.0x; and

      d. The number of fully diluted outstanding shares of Company Options, Company Warrants, and Company RSUs as of February 9, 2024, utilized.

57. With respect to the *Premia Paid Analysis*, the Recommendation Statement fails to disclose the following:

      a. The specific companies analyzed;

      b. The specific per share price premia for the companies analyzed;

      c. The specific inputs, metrics, and assumptions used to determine the applied 1-day unaffected per share price premia of 59% to 100% utilized; and

      d. The specific inputs, metrics, and assumptions used to determine the applied 52-week high closing price of the Shares of 13% to 52% utilized.

58. With respect to the *Analyst Price Targets Analysis,* the Recommendation Statement fails to disclose the following:

      a. The specific price targets analyzed; and

      b. The specific Wall Street firms that generated the analyzed price targets.

59. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

60. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

# FIRST COUNT

## Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

61. Plaintiff repeats all previous allegations as if set forth in full herein.

62. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

63. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

64. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

67. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

68. Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

69. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

70. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

71. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

72. SEC Rule 14d-9 requires a Company's directors to furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

73. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

74. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

75. Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

76. Plaintiff repeats all previous allegations as if set forth in full herein.

77. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

78. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

79. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of CymaBay's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

80. The Individual Defendants acted as controlling persons of CymaBay within the meaning of Section 20(a) of the Exchange Act. Because of their position with the Company, the Individual Defendants had the power and authority to cause CymaBay to engage in the wrongful conduct complained of herein. The Individual Defendants controlled CymaBay and all of its employees. As alleged above, CymaBay is a primary violator of Section 14 of the Exchange Act

and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 1, 2024

**BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*